**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 26-134** |
| **BEKHZOD RAKHMATOV** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The government respectfully submits this memorandum to assist the Court in imposing a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## I. **<u>BACKGROUND</u>**

On March 25, 2026, the U.S. Attorney's Office for the Eastern District of Pennsylvania filed a two-count Information against Bekhzod Rakhmatov. Count 1 charged him with conspiracy to bring aliens to the United States for private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) and (a)(1)(B)(i). Count 2 charges the defendant with attempt to bring an alien to the United States for private financial gain, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii). On March 30, 2026, the defendant appeared before the Honorable Wendy Beetlestone, waived prosecution by Indictment, and pled guilty to Counts 1 and 2 of the Information, pursuant to a written guilty plea agreement.

## II. **<u>FACTS OF THE CASE</u>**

The defendant agreed to the following facts at his change of plea hearing:

### A. **<u>Count One</u> - Conspiracy to Bring Aliens to the United States at Place Other than One Designated for Entry for Private Financial Gain**

From in or about July, 2024, to on or about October 5, 2024, in the Eastern District of Pennsylvania and elsewhere, the defendant Bekhzod Rakhmatov conspired to bring aliens to the United States, knowing they were aliens, to a place other than a designated port of entry or at a place other than as designated by a United States immigration official for the purpose of private financial gain. Through the investigation, law enforcement obtained, among other things,

messages, photographs, and proof of payment, and recorded conversations between the defendant and aliens, or persons acting on behalf of aliens, relating to the defendant's participating in a conspiracy to bring aliens to the United States at a place other than one designated by the United States. The government was also able to identify numerous specific aliens who were brought to the United States by the defendant and his conspirators and who confirmed that the defendant and his conspirators had been paid to smuggle the aliens into the United States. In total, the defendant helped smuggle at least 25 aliens into the United States.

Rakhmatov was a central participant in a large-scale international human smuggling network with connections spanning the United States, Mexico, Central and South America, Europe, and Central Asia. The conspiracy primarily involved smuggling individuals from countries including Tajikistan and Uzbekistan into the United States.

Rakhmatov worked closely with multiple co-conspirators (Co-Conspirators 1, 2, and 3) to facilitate the smuggling of dozens of aliens into the United States. [2] Evidence obtained during the investigation, including recorded calls, electronic communications, financial records, and witness

[2] Co-Conspirators 1, 2, and 3 have been charged elsewhere.

testimony, show Rakhmatov's participation in the conspiracy.

Specifically,

- Rakhmatov coordinated international travel routes used to smuggle aliens into the United States, including routes through Europe, Central America, and Mexico;
- He arranged for the procurement and use of fraudulent travel documents, including fake passports and visas;
- He facilitated the purchase of airline tickets and travel logistics for aliens;
- He controlled or received substantial payments related to the smuggling operation, including through accounts associated with a business he controlled, which received hundreds of thousands of dollars in transactions tied to the smuggling scheme.

The defendant and his co-conspirators charged thousands of dollars per person to smuggle aliens into the United States. Financial records demonstrate that large sums of money were transferred among co-conspirators, including payments to Rakhmatov for his role in coordinating the smuggling activity.

As part of the conspiracy, aliens were smuggled into the United States through non-designated points of entry, including crossing the U.S.-Mexico border unlawfully. Numerous individuals smuggled by the conspiracy were apprehended by U.S. Border Patrol shortly after entering the United States.

**B. <u>Count Two</u> - Attempt to Bring Aliens to the United States for Private Financial Gain**

From on or about April 2024 through on or about October 5, 2024, in the Eastern District of Pennsylvania and elsewhere, the defendant, for the purpose of private financial gain,

attempted to bring an individual ("Person 1") to the United States, knowing that Person 1 had not received prior authorization to enter or reside in the United States.

During this time period, Rakhmatov worked in coordination with Co-Conspirators 1 and 2 and others to arrange for the smuggling of Person 1 from Tajikistan to the United States. The evidence would show that Rakhmatov was actively involved in coordinating the logistics of this effort, including communicating with co-conspirators regarding travel routes, timing, and payments, and providing direction regarding how Person 1 would be transported along the smuggling route.

As part of the scheme, Person 1's travel was arranged from Tajikistan to Georgia, with the understanding that Person 1 would then continue onward through multiple countries, including routes through Central and South America, before ultimately reaching the United States. Rakhmatov and his co-conspirators discussed and implemented various methods to facilitate this travel, including the procurement and use of fraudulent travel documents. In particular, the conspirators arranged for Person 1 to receive a fraudulent Russian passport to assist in traveling through international airports without detection. Rakhmatov provided guidance regarding the use of such documents and participated in coordinating their delivery and use as part of the broader smuggling plan.

Throughout this period, Rakhmatov also coordinated with co-conspirators regarding the collection and distribution of funds related to the smuggling of Person 1. The conspirators required significant payments in exchange for facilitating Person 1's travel, and Rakhmatov expected to receive a portion of those proceeds for his role in the operation.

Despite these efforts, on or about September 19, 2024, Person 1 attempted to travel using the fraudulent passport but was detected by foreign authorities and removed, preventing

completion of the smuggling attempt. Nevertheless, the actions taken by Rakhmatov and his co-conspirators—including arranging international travel, providing fraudulent documents, coordinating payments, and directing the logistics of the journey—constituted substantial steps toward bringing Person 1 into the United States unlawfully.

## III. SENTENCING CALCULATION

### A. Statutory Maximum Sentence.

The Court may impose the following statutory maximum sentence on each count:

Count One: 10 years' imprisonment, a 3-year period of supervised release, a fine of $250,000, and a $100 special assessment.

Count Two: 10 years' imprisonment, a mandatory 3-year term imprisonment, a 3-year period of supervised release, a fine of $250,000, and a $100 special assessment.

Total Maximum Sentence: 20 years' imprisonment, a mandatory 3-year term of imprisonment, a 3-year period of supervised release, a fine of $500,000 and a $200 special assessment.

### B. Sentencing Guidelines Calculation.

The Probation Office correctly calculated the defendant's advisory guideline range as follows:

The guideline for a violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) is USSG §2L1.1, and it provides for a base offense level of 12 in this case. USSG §2L1.1(a)(3). Since the offense involved the smuggling of between 25 and 99 aliens, six levels are added. USSG §2L1.1(b)(2)(B). The offense created a substantial risk of death or serious bodily injury to

another person by facilitating the perilous journey of aliens through treacherous terrain; therefore, two levels are added. USSG §2L1.1(b)(6).

The defendant has demonstrated acceptance of responsibility for the offenses. Accordingly, the offense level is decreased by two levels. USSG §3E1.1(a). The defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by one additional level. USSG §3E1.1(b).

Based upon a total offense level of 17 and a criminal history category of I, the guideline imprisonment range is 24 months to 30 months. However, the statutorily required minimum sentence for Count 2 is greater than the maximum of the applicable guideline range; therefore, the effective guideline term of imprisonment is 36 months. USSG §5G1.1(b).

## IV. GOVERNMENT'S RECOMMENDATIONS CONCERNING SENTENCING

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the

history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

### B. Application

The relevant § 3553(a) factors will be discussed in turn.

#### 1. The Nature and Circumstances of the Offense

The nature and circumstances of the defendant's offenses are serious and warrant a substantial custodial sentence. Rakhmatov participated in an international human-smuggling conspiracy that operated across multiple countries and continents and was designed to bring aliens unlawfully into the United States for private financial gain. The conspiracy involved individuals traveling from Central Asia, including Tajikistan and Uzbekistan, through Europe, Central and South America, Mexico, and ultimately into the United States. The scheme involved at least 25 aliens and generated thousands of dollars per person in illicit proceeds.

Alien smuggling offenses are inherently dangerous. As reflected in the guideline enhancement applied in this case, the defendant's conduct created a substantial risk of death or serious bodily injury by facilitating perilous journeys through multiple countries and across

treacherous terrain. Several individuals were apprehended near the U.S.–Mexico border after undertaking hazardous travel arranged by the defendant and his co-conspirators.

This was not a spontaneous or isolated act. It was an organized, ongoing enterprise carried out for private financial gain, involving planning, coordination with others, and repeated execution over an extended period.

### 2. The History and Characteristics of the Defendant

The defendant has no prior criminal history and falls within Criminal History Category I. He accepted responsibility for his conduct at an early stage by pleading guilty.

At the same time, the defendant was not a minor participant. He exercised direction and coordination within the conspiracy and personally met with individuals facilitating the smuggling scheme. His conduct reflects deliberate and knowing participation in a serious federal offense undertaken for financial gain.

### 3. The Need for Sentence Imposed to Reflect Seriousness of the Offense, Promote Respect for Law, and Provide Just Punishment

Alien smuggling for profit undermines the integrity of the nation's immigration system and exploits vulnerable individuals seeking entry into the United States. A meaningful term of imprisonment is necessary to reflect the seriousness of organizing and profiting from such unlawful conduct.

Such a sentence would be consistent with the applicable guideline framework appropriately recognizes both the gravity of the offense and the need to promote respect for federal law. It signals that coordinated efforts to circumvent lawful immigration processes will result in significant consequences.

### 4. The Need for Adequate Deterrence and Protection of the Public

General deterrence is particularly important in alien smuggling cases. Such offenses are often driven by financial incentive and depend on the perception that the risk of meaningful punishment is limited. A substantial sentence is necessary to deter others who might consider engaging in similar conduct for profit.

Specific deterrence is also warranted. Although the defendant has accepted responsibility, the duration and organization of the conspiracy demonstrate a willingness to engage in calculated criminal conduct. A custodial sentence is necessary to deter future violations and to protect the public from further criminal activity.

**5. The Need to Provide the Defendant with Training, Medical Care or Correctional Treatment**

There is no demonstrated need to adjust the sentence in order to provide the defendant with educational or vocational training, medical care or additional treatment that cannot be adequately addressed by the Bureau of Prisons during incarceration.

**6. The Need to Avoid Unwarranted Sentence Disparities Among Similarly Situated Defendants**

Adherence to the recommended guideline range is generally the best course for assuring that the defendant's sentence is consistent with those imposed nationwide on similarly-situated offenders. Here, however, the defendant's guilty plea demonstrates his acceptance of responsibility for his conduct in this case and, at least in part, his willingness to move forward and become a productive member of society upon his release from prison. Thus, the government believes that a sentence within the recommended range is commensurate with the defendant's actions. It would be the most severe sentence the defendant has faced, and it takes into account, as detailed above, the individual circumstances and characteristics of this defendant as well as all of the 3553(a) factors.

## V. CONCLUSION

The government's final recommendation regarding sentencing appears in the sealed attachment.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s EVERETT WITHERELL*
EVERETT WITHERELL
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that this Sentencing Memorandum has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

Alan Tauber, Esq.

*/s Everett Witherell*
EVERETT WITHERELL
Assistant United States Attorney

DATED: October 27, 2026.